UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONA LEE SCOTIA,<br><br>            Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>            Defendant. | Case No. 1:15-cv-00897-EPG<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**I.    INTRODUCTION**

Plaintiff Mona Lee Scotia ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Erica P. Grosjean, United States Magistrate Judge.[1] After a review of the administrative record, the Court finds the ALJ's decision is proper and is supported by substantial evidence in the record as a whole. Accordingly, this Court affirms the agency's determination to deny benefits and denies Plaintiff's appeal.

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 8 and 9).

1

## II. BACKGROUND AND PRIOR PROCEEDINGS

Plaintiff filed an application for SSI on November 30, 2012, alleging a disability onset date of January 31, 2011.  AR 25.[2]  Her application was denied initially on April 15, 2013 and on reconsideration on October 1, 2013.  AR 92-95; 99-102.  A hearing was conducted before Administrative Law Judge ("ALJ") Thomas Cheffins on July 10, 2014.  AR 40-65.  On October 17, 2014, the ALJ issued a decision finding that Plaintiff was not disabled.  AR 22-35.  Plaintiff filed an appeal of the decision with the Appeals Council.  AR 20.  The Appeals Council denied her appeal, rendering the order the final decision of the Commissioner.  AR 1-6.

Plaintiff now challenges that decision, arguing that the ALJ's decision is not based on substantial evidence in the record and that the ALJ erred when he found Plaintiff's testimony not credible.  (Doc. 18, pgs. 5-9).  As a result of this error, Plaintiff argues that the Court should reverse the ALJ's decision and remand the case to the Social Security Administration with instructions to award benefits.  In opposition, Defendant argues that the ALJ's adverse credibility findings are supported by substantial evidence.  (Doc. 21, pgs. 4-8).

### A. Plaintiff's Testimony

Plaintiff was 59 years old at the time of the hearing.  AR 45.  Plaintiff is 5'6 ½" and weighs about 180 pounds.  AR 47.  She graduated college in 2010 and has a cosmetology license.  AR 47.  Plaintiff most recently worked as a hairdresser in 2010.  AR 48.  Plaintiff also worked briefly as a telemarketer.  AR 50-51.

Plaintiff testified that the pain in her lower back, neck, leg/knee, and feet limits her ability to work.  AR 49-54.  Plaintiff has received shots to alleviate the pain in her back and feet.  AR 52-53.  Plaintiff takes Vicodin when the pain is severe and Tramadol when the pain is moderate.  AR 55.  The medication makes Plaintiff dizzy.  AR 55.  Plaintiff uses a cane, although it was not prescribed by a doctor.  AR 54-55.

Plaintiff lives with her boyfriend.  AR 46.  Plaintiff reports that she has trouble standing, sitting, driving, and lifting objects.  AR 54-55.  Plaintiff reports spending most of the day lying down.  AR 55.  Plaintiff occasionally reads and uses a computer.  AR 56.  Plaintiff asserts that she

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

is unable to do housework and that her boyfriend does all of the shopping and chores around the home.  AR 55-56.  Plaintiff does not drive, except for emergencies.  AR 56.

### B.     Medical Record

The entire medical record was reviewed by the Court, however, only evidence that relates to the issues raised in this appeal is summarized below.

### *i.     Treating Physician – Thomas Mertins, M.D.*

Dr. Mertins has been Plaintiff's primary care physician since 2010.  AR 56-57.  Dr. Mertins examined Plaintiff on July 2, 2014 and opined that Plaintiff's chronic back and knee pain prevent her from being able to stand or sit for six to eight hours at a time.[3]  AR 310-11.  Dr. Mertins noted that Plaintiff could stand for only ten minutes, walk for 100 feet without rest, and that Plaintiff's impairments require her to lie down during the day.  AR 312.  Additionally, Dr. Mertins noted that Plaintiff was rarely able to reach up above her shoulders, down to her waist, or towards the floor.  AR 312.  Lastly, Dr. Mertins opined that Plaintiff was only able to lift and carry less than five pounds regularly.  AR 312.  Based on these findings, Dr. Mertins concluded that Plaintiff was unable to work.  AR 313.

X-rays of Plaintiff's cervical spine, taken on June 25, 2014, showed a slight reversal of cervical lordosis centered at the C4 to C5 level, moderate narrowing of disc spaces at C3 to C4 and C6 to C7, and some facet arthropathy at C6 to C7.  AR 331.  An MRI scan, performed on July 14, 2014, showed multilevel degenerative disc disease, severe left-sided intervertebral neural foramina stenosis and impingement on the crossing left C4 nerve root at C3 to C4, mild to moderate right-sided intervertebral neural foramina stenosis, and moderate left-sided intervertebral neural foramina stenosis with probable impingement on the crossing left C7 nerve root at C6 to C7.  AR 387-88.[4]

---

[3] The ALJ gave little weight to Dr. Mertins and gave more weight to consulting examiner Dr. Peetoom, treating physicians Dr. Zachary and Dr. Carlson, and examining physician Dr. Dekutoski.  AR 31-35.  Plaintiff does not contend that the ALJ inappropriately weighted these opinions.

[4] An MRI scan of Plaintiff's cervical spine and lumbar spine, performed on December 16, 2005, is also included in the medical record.  AR 220-23.  The MRI scan of the cervical spine showed moderate central spinal stenosis and bilateral neural foraminal stenosis as well as a broad-based disc bulge, causing some moderate encroachment on the spinal cord and existing nerve roots at C6 to C7.  AR 221.  The MRI scan of the lumbar spine was normal, showing only mild multilevel degenerative changes consistent with Plaintiff's age.  AR 223.

### *ii.*     *Treating Physician – Mark Zachary, M.D.*

Plaintiff was examined by Dr. Zachary on November 14, 2012. AR 236. Dr. Zachary found that Plaintiff had a mild decrease in range of motion of the right knee with pain as well as crepitus and tenderness in the lateral aspect. AR 237. Dr. Zachary found Plaintiff's right knee quadriceps strength to be decreased, but that she had an intact anterior cruciate ligament ("ACL"), as well as medial collateral ligament stability. AR 237. Plaintiff had no effusion, posterior knee swelling, calf tenderness, or distal edema. AR 237. Dr. Zachary diagnosed Plaintiff with right medial knee pain with lateral knee degenerative arthritis and lateral meniscal tear and obesity. AR 238. Dr. Zachary reviewed an MRI scan of Plaintiff's right knee, performed on November 10, 2012, which showed advanced degenerative changes, displacement of the lateral meniscus from the joint line, and a complex tear and degeneration of the anterior horn of the lateral meniscus. AR 237; 280. Dr. Zachary found that Plaintiff's symptoms did not seem to correspond with the MRI's findings, and as such, Plaintiff was not a candidate for surgical intervention. AR 238. At the examination, Plaintiff denied experiencing paranoia, depression, anxiety or any sleep disturbances. AR 237.

On February 7, 2013, Dr. Zachary noted that Plaintiff "continued to complain of pain on the medial aspect of the knee, although she is somewhat improved." AR 296. Dr. Zachary opined that Plaintiff should "continue knee strengthening exercises" and "avoid aggravating factors." AR 296. On May 29, 2013, Plaintiff presented as having recurring pain in her knee with difficulty walking. AR 290. Plaintiff denied any locking, catching, or giving way. AR 290. On April 10, 2013, Dr. Zachary recommended that Plaintiff continue with knee exercises and that if symptoms recurred, Plaintiff should consider Orthovisc injections. AR 294. On September 20, 2013, Dr. Zachary noted that Plaintiff's symptoms in her knee were improving after receiving Orthovisc injections. AR 283. At the examination, Plaintiff stated that she felt her leg was getting stronger, and denied any locking, catching, or giving away. AR 283. However, on March 17, 2014, Dr. Zachary noted that Plaintiff continued to complain of severe pain in her knee and that prior steroid and Orthovisc injections were not providing her relief. AR 277. Dr. Zachary opined that Plaintiff's choices were to try additional steroid injections or proceed with

arthroscopic surgery. AR 277. Dr. Zachary informed Plaintiff that there was no guarantee that arthroscopic surgery of her right knee would provide the pain relief she was looking for.[5] AR 277. Dr. Zachary explained that Plaintiff had underlying severe arthritis and would eventually need a total knee arthroplasty. AR 277. Plaintiff did not elect to proceed with surgery, preferring instead to have a less invasive procedure. AR 277. On March 21, 2014, Dr. Zachary noted that an x-ray showed narrowing of the lateral joint line and osteophyte formation. AR 275. Dr. Zachary opined that Plaintiff was a candidate for partial knee replacement surgery of the lateral compartment. AR 275.

### iii.    Treating Physician – Jonathan D. Carlson, M.D.

Plaintiff visited Dr. Carlson on March 5, 2013, and again on September 6, 2013, to be evaluated for pain in her left side and back. AR 262-73. At both examinations, Dr. Carlson observed that Plaintiff had joint pain, stiffness, muscle weakness, joint swelling, back pain, muscle aches, and had experienced weight gain. AR 263; 270. Dr. Carlson noted that Plaintiff had focal tenderness at the bilateral lumbar paraspinous and pain with lumbar facet loading maneuvering. AR 264; 269. Dr. Carlson found Plaintiff to have normal tone and strength at her neck, spine, and upper and lower extremities. AR 264-65; 269-70. Dr. Carlson found Plaintiff's gait and station to be normal and found that she could undergo exercise testing and participate in an exercise program. AR 264; 269. Dr. Carlson performed a mental status exam and determined that Plaintiff did not suffer from depression or anxiety. AR 265; 270.

Plaintiff denied "tingling, numbness, or weakness" at the March 5, 2013 examination. AR 270. Dr. Carlson prescribed Plaintiff a trial period of tramadol. AR 270. An MRI, taken on September 4, 2013, showed severe disc desiccation, mild facet arthropathy, mild central canal stenosis, and moderate neural foramen narrowing at L2 to L3. AR 272. Plaintiff had a mild symmetrical disc bulge, facet arthropathy, and neural foramen narrowing at L3 to L4. AR 272. At L4 to L5, Plaintiff had severe facet arthropathy, moderate central canal stenosis, and left neural foramen narrowing. AR 272-73. At the September 6, 2013 examination, Dr. Carlson

---

[5] During an urgent care visit on July 29, 2014, Dr. Stephen Ripple also informed Plaintiff that he did not believe that an arthroscopic intervention at the right knee would be of significant benefit. AR 392-93. Dr. Ripple instead referred Plaintiff to a different physician to be examined for a joint replacement. AR 393.

noted that Plaintiff stated that she "feels the pain medication regimen helps to improve activities of daily living." AR 266. Dr. Carlson prescribed Plaintiff a trial period of ketoprofen, hydrocodone, and bilateral L3-S1 facet joint injections. AR 266. Additionally, Dr. Carlson noted a plan for Plaintiff to participate in a weight loss regimen and exercise therapy program. AR 266.

### iv. *Examining Physician – Mark Dekutoski, M.D.*

Dr. Dekutoski met with Plaintiff on June 19, 2013 in regards to Plaintiff's complaints of constant lower back pain. AR 255-61. Dr. Dekutoski observed that Plaintiff was in no obvious distress. AR 258. Dr. Dekutoski noted that Plaintiff was moderately obese, had a significantly deconditioned forward soft posture, and moved with a myofascial pain pattern. AR 258. Dr. Dekutoski found Plaintiff to have a limited range of motion of the lumbar spine, but noted that Plaintiff did not have pain with facet loading and had no issues with straight leg raises. AR 258-59. Dr. Dekutoski found Plaintiff to have full motor strength of the upper and lower extremities, and that Plaintiff had a normal range of motion of the thoracic and cervical spine. AR 259-60. Dr. Dekutoski noted that Plaintiff had a normal gait and station, and found Plaintiff to have normal strength and no instability of the cervical, thoracic, and lumbar trunk. AR 259-60. Dr. Dekutoski informed Plaintiff that her symptoms would benefit from a behavioral program. AR 261.

### v. *Surgical Procedure*

Plaintiff underwent surgery of the right foot on October 14, 2011.[6] AR 341; 347-49. The purpose of the procedure was to correct an arthritic bunion, fusion of the first metatarsophalangeal joint, osteotomy of the fifth metatarsal shaft, and excision of hypertrophic bone at the fifth metatarsal head. AR 341; 347-49. Post-operative treatment notes, dated December 22, 2011, indicated that Plaintiff felt very happy with the surgery. AR 355. On March 1, 2012, Plaintiff stated that the burning pain had completely resolved on the top of both feet and

---

[6] Prior to receiving surgery, Plaintiff visited the emergency department at Banner Estrella Medical Center on July 22, 2011, reporting foot pain and parasthesias at the bottoms of her feet. AR 224-31. Plaintiff described the pain as episodic, severe burning sensations that felt like pins and needles to the bottom of her feet. AR 226. Plaintiff denied joint pain, numbness, tingling, or weakness. AR 226. She was found to have slight erythema between the toes, but she had no swelling, deformity, or bruises at her feet. AR 227-28. Plaintiff had a normal range of motion of her feet and toes as well as normal motor function and sensation. AR 227.

that she was able to walk in normal shoe gear.  AR 368.  Plaintiff underwent surgical correction of hardware removal at the right foot on March 16, 2012.  AR 370.  Treatment notes, dated March 19, 2012, indicated that Plaintiff was doing well and that the pain was under control.  AR 371.[7]

### vi. Consulting Examiner – Greg A. Peetoom, Ph.D.

Dr. Peetoom performed a psychological examination of the Plaintiff on April 4, 2013.  AR 239-46.[8]  Dr. Peetoom's physical observations were:  Plaintiff's clothing was casual and neat; Plaintiff shifted frequently in her chair due to physical pain; and Plaintiff was alert but easily flustered.  AR 240.  Dr. Peetoom performed a Mini Mental Status Exam ("MMSE") on Plaintiff, on which she scored 27 out of 30.  AR 242.  Plaintiff did not report any history of mental health treatment.  AR 243.  Dr. Peetoom found that:  Plaintiff's eye contact was good; Plaintiff's speech was normal in rate, amplitude, and fluency; Plaintiff's comprehension was fair; and, Plaintiff was oriented in all spheres.  AR 243.  Plaintiff stated that her sleep was okay and that her appetite was normal.  AR 241.  Plaintiff denied experiencing suicidal ideation and reported no symptoms of anxiety.  AR 241.  Plaintiff did state that she only showers if she is going somewhere.  AR 241.  She also stated that she can:  prepare simple things to eat; occasionally go for short walks; and, talk to her friends on the phone about four times per week.  AR 241.

Dr. Peetoom diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood.  AR 243.  Dr. Peetoom opined that Plaintiff seemed capable of comprehending and remembering most instructions, but that she might occasionally ask for an instruction to be repeated.  AR 243.  Dr. Peetoom found that although Plaintiff might have occasional lapses in attention and concentration, she seemed capable of generally carrying out instructions.   AR 243.  Dr. Peetoom found that Plaintiff:  (1) was able to complete normal activities of daily living; (2) had no limitation in social functioning; and, (3) seemed capable of generally completing tasks independently.  AR 239-46.

Dr. Peetoom also found that Plaintiff was not a fully reliable reporter because she

---

[7] Plaintiff visited the podiatry clinic again on October 28, 2013 reporting pain in her left foot.  AR 381.  Plaintiff was found to have an arthritic bunion on her left foot.  AR 381.

[8] It is unclear whether Dr. Peetoom reviewed the entire medical record, as he only notes having reviewed three pages of Disability Report-Adult-Form SSA-3368.  AR 240.

provided only vague responses. AR 240. Dr. Peetoom noted that Plaintiff "never clearly explained how the physical pain impacted her ability to work." AR 240. When discussing what medications Plaintiff was taking, Dr. Peetoom noted that Plaintiff "initially stated that her physician took her off pain medication because he thought she took too many of the pills," but upon asking Plaintiff to clarify, Plaintiff indicated to Dr. Peetoom "that the physician did not renew the prescription because he referred her to pain management." AR 241. When discussing past employment, Plaintiff "stated she quit because of physical pain but later stated she was fired for being late." AR 242. Furthermore, Plaintiff reported a history of depression occurring during the last year, however, Dr. Peetoom noted that Plaintiff did not describe significant symptoms of depression. AR 243.

### vii. Reviewing Consultant – Edith King, Ph.D.

Dr. King reviewed Plaintiff's medical record on April 9, 2013. AR 70-72. Dr. King found that Plaintiff had mild limitations in activities of daily living; maintenance of social functioning; and, maintenance of concentration, persistence, or pace. AR 71. She opined that Plaintiff's affective disorder caused no episodes of decompensation. AR 71. Dr. King further opined that Plaintiff's functional allegations are only partially credible because statements made by Plaintiff were vague and not supported by the evidence as a whole. AR 72.

### viii. Reviewing Consultant – Mary Downs, Ph.D.

Dr. Downs reviewed Plaintiff's medical record on October 1, 2013. AR 84-86. Dr. Downs affirmed Dr. King's assessment in finding Plaintiff to have only mild limitations in activities of daily living; maintenance of social functioning; and, maintenance of concentration, persistence, or pace. AR 85. Dr. Downs also found Plaintiff only partially credible, noting that Plaintiff's most recent MRI did not support a worsening of Plaintiff's mental condition or suggest significant functional limitations that would preclude participation in substantial gainful activity. AR 86.

### ix. Reviewing Consultant – Martha A. Goodrich, Ph.D.

Dr. Goodrich reviewed Plaintiff's medical record on October 1, 2013. AR 87-88. Dr. Goodrich opined that Plaintiff was able to perform at a medium functional level, limited to

occasional climbing and crawling. AR 87-88. Dr. Goodrich found that Plaintiff could stand, walk or sit with normal breaks for about six hours in an eight-hour workday. AR 87. Dr. Goodrich also found that Plaintiff was able to frequently balance, stoop, kneel, and crouch. AR 88.

### x. *Reviewing Consultant – Craig Billinghurst, Ph.D.*

Dr. Billinghurst reviewed Plaintiff's medical record on March 1, 2013. AR 72-74. Dr. Billinghurst opined that Plaintiff was able to perform the full range of light work. AR 72-74.

## III. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 416.1529, 416.927, and 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[9] (3) whether these impairments meet or are

---

[9] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.920(c).

9

medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his or her past relevant work,[10] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 416.920(a)-(f).

### A. The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 25-35. More particularly, the ALJ found that that Plaintiff had not engaged in substantial gainful activity since November 30, 2012, the date Plaintiff filed her application. AR 28. The ALJ identified degenerative disc disease of the cervical and lumbar spine, obesity, status post-surgical removal of arthritic bunion and hardware on the right foot, arthritic bunion on the left foot, and degenerative joint disease of the right knee as severe impairments. AR 28. Nonetheless, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 30.

Based on the review of the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with certain limitations. AR 30. The ALJ found that Plaintiff is limited to occasional climbing, kneeling, and crawling. AR 30. In addition, Plaintiff is limited to no more than frequent balancing, crouching, and stooping. AR 30. The ALJ determined that Plaintiff is able to occasionally reach overhead, bilaterally. AR 30. Based on this RFC, the ALJ determined that Plaintiff could perform her past relevant work as a phone solicitor. AR 35.

### IV. STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations,

---

[10] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether:  (1) it is supported by substantial evidence; and (2) it applies the correct legal standards.  *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Id*.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Id*.

**V.    DISCUSSION**

**A.    The ALJ's Credibility Determination was Proper.**

Plaintiff argues that the ALJ failed to provide clear and convincing evidence for discounting Plaintiff's testimony with regard to the effects of her symptoms.  (Doc. No. 18, pg. 7.)  Specifically, Plaintiff contends that the ALJ did not provide legally sufficient reasons for finding Plaintiff not fully credible and that in making these findings, the ALJ extrapolated beyond inferences reasonably supported by the record.  (Doc. 18, pg. 5.)  In opposition, the Commissioner asserts that the ALJ provided substantial evidence in support of his adverse credibility findings.  (Doc. 21.)

A two-step analysis applies at the administrative level when considering a claimant's credibility.  *Treichler v. Comm. of Soc. Sec.*, 775 F. 3d 1090, 1098 (9th Cir. 2014).  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Id.*  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so.  *Id.*; *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements

11

and reasons for that weight."). Factors an ALJ may consider include, among others: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and, (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Work records, physician and third party testimony about the nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). It is not the role of the Court to re-determine Plaintiff's credibility *de novo*. If the ALJ's finding is supported by substantial evidence, the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

In this case, following consideration of the evidence and an in-person hearing, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms are not entirely credible." AR 33. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-82.

The ALJ did not find that Plaintiff was malingering and was therefore required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Brown –Hunter*, 806 F. 3d at 493; *Smolen*, 80 F.3d at 1283-84; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his or her symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991). Moreover, general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Brown-Hunter*, 806 F. 3d at 493.

The ALJ found Plaintiff's allegations regarding her knee and back pain only partially credible because Plaintiff's reported loss of function was not supported by the medical evidence and record as a whole. In making this determination, the ALJ cited evidence in the record that: (1) Plaintiff's current treatment has effectively controlled her symptoms; (2) Plaintiff has consistently chosen more conservative treatment than recommended; and (3) Plaintiff could

benefit from a behavioral program that includes exercise and weight loss.  AR 30-35.

The ALJ found that Plaintiff's pain was decreasing with treatment.  "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining elibility for SSI benefits."  *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006).  An ALJ may discount testimony of pain when a claimant responds favorably to conservative treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  As the ALJ noted, Plaintiff "informed Dr. Carlson on March 5, 2013 that prescription medication was effective in reducing her pain."  AR 33, *citing* AR 270.  On May 27, 2013, Plaintiff reported that she had been receiving cortisone injections for the right knee, which had been helping.  AR 33, *citing* AR 251. Dr. Carlson noted on September 6, 2013 that Plaintiff felt that "the pain medication regimen help[ed] to improve activities of daily living."  AR 266.  Plaintiff "reported that the medications provided adequate analgesia and caused no significant side effects."  AR 266.  On September 20, 2013, Dr. Zachary noted that Plaintiff's symptoms in her knee "were improving after receiving Orthovisc injections."  AR 283.  Plaintiff informed Dr. Zachary that she "felt that her leg was getting stronger."  AR 283.  This evidence could all lead a reasonable factfinder to conclude that Plaintiff was exaggerating the extent of her pain.

Moreover, Plaintiff has alleged severe right knee pain for years, but the medical record shows that she has only received conservative treatment.  A claimant's choice of conservative treatments can serve as a basis for an adverse credibility determination.  *See* 20 C.F.R. § 404.1529(c)(3)(v) (an ALJ may consider the conservative nature of claimant's treatment); *Johnson*, 60 F.3d at 1434 (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility; no medical treatment or a conservative level of medical treatment has been found to suggest a lower level of pain and functional limitations).  The ALJ found that the record shows that the extent of Plaintiff's pain relief has been in the form of steroid injections and medication.  AR 52-53; 55; 266; 270; 277; 283.  Surgery has been suggested, however, Plaintiff has consistently elected to proceed with a less invasive procedure each time. AR 51-52; 275-77.  Based on this evidence, the ALJ could reasonably conclude that Plaintiff's symptoms were not as debilitating as she testified.

Plaintiff contends that an overall reading of the record shows ongoing pain and an inability of treatment to provide adequate relief of pain and that the ALJ selectively favored treatment records that found improvement. (Doc. 18, pg. 7.) This argument is unpersuasive, however, because there is ample evidence that the ALJ took into account Plaintiff's subjective complaints and reviewed the entire medical record in making his decision. Indeed, the ALJ even gave little weight to both Dr. Billinghurst and Dr. Goodrich, who opined that Plaintiff could perform light or medium work, because they did not consider Plaintiff's "subjective complaints of pain," and treatment with specialists. AR 34; 73-74; 87-89. This suggests that the ALJ was not, in fact, simply ignoring records that did not fit a pre-conceived conclusion. Rather, he reviewed the entire record and attempted to resolve any existing medical opinion conflicts. These actions are entirely consistent with the ALJ's role. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Lastly, the ALJ found that multiple doctors informed Plaintiff that her pain could be alleviated by exercise and physical therapy, but Plaintiff did not follow this prescribed course of treatment. An ALJ making an SSI disability determination may properly consider whether a claimant's symptoms can be alleviated by physical exercise, so long as this finding is supported by substantial medical evidence in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1167 (9th Cir. 2001). Failure to follow a prescribed course of treatment is a proper reason to reject a claimant's testimony regarding the severity of his or her symptoms. *See Smolen*, 80 F.3d at 1282. The ALJ concluded that the medical record objectively showed that Plaintiff's pain could benefit from exercise and weight loss. AR 33. Specifically, the ALJ noted that Dr. Dekutoski informed Plaintiff that her symptoms would benefit from a behavioral program. AR 33. Despite Dr. Dekutoski's recommendation, there is no evidence in the record that shows that Plaintiff participated in physical therapy or attempted any of the prescribed behavioral changes. Other medical providers appeared to have concurred with Dr. Dekutoski's recommendation. For example, on February 7, 2013, Dr. Zachary informed Plaintiff that she should "continue knee strengthening exercises" and "avoid aggravating factors." AR 296. On March 5, 2013, and again on September 6, 2013, Dr. Carlson found that Plaintiff could undergo exercise testing and

participate in an exercise program. AR 264; 269. On April 10, 2013, Dr. Zachary recommended Plaintiff continue with knee exercises. AR 294. On September 6, 2013, Dr. Carlson noted a plan for Plaintiff to participate in a weight loss regimen and exercise therapy program. AR 266. Substantial evidence supports the conclusions that: (1) at least some of Plaintiff's symptoms may have been alleviated by physical exercise; (2) medical providers prescribed physical exercise to Plaintiff as a way of alleviating her symptoms; and, (3) Plaintiff did not follow this course of treatment. The ALJ did not commit error in concluding that Plaintiff's credibility was doubtful on this basis.

Given the above, the ALJ provided clear and convincing reasons that are supported by substantial evidence to conclude Plaintiff's subjective symptom testimony was not fully credible. The ALJ clearly identified what testimony he found not credible and what evidence undermined Plaintiff's complaints. *Brown-Hunter,* 806 F. 3d at 493; *Lester,* 81 F.3d at 834. Even if evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, as it was here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). The ALJ's conclusion that Plaintiff was exaggerating her symptoms was a rational conclusion. Accordingly, the ALJ's credibility determination was proper.

## VI. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision that the Plaintiff is not disabled as defined by the Social Security Act is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

\\\
\\\
\\\
\\\
\\\

The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, the Commissioner of Social Security and against Plaintiff Mona Lee Scotia.

IT IS SO ORDERED.

Dated: **July 22, 2016**         /s/ Erica P. Grosjean
                                 UNITED STATES MAGISTRATE JUDGE